UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONNA DAVIS JAVITZ,<br><br>                    Plaintiff,<br><br>       v.<br><br>SHELBY WATCHILLA, ROMILDA CROCAMO, and LUZERNE COUNTY,<br><br>                    Defendants. | CIVIL ACTION NO. 3:23-CV-01135<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

On November 14, 2023, Plaintiff Donna Davis Javitz ("Javitz") filed an amended complaint in this matter, asserting various civil rights claims under § 1983 against Defendants Shelby Watchilla ("Watchilla"), Romilda Crocamo ("Crocamo"), and Luzerne County ("Luzerne County" or the "County") (collectively, "Defendants").[1] (Doc. 53-1). Presently before the Court is a motion to dismiss filed by Defendants Crocamo and Luzerne County. (Doc. 56). For the following reasons, Defendants' motion to dismiss shall be **GRANTED.** (Doc. 56).

**I.   BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from Javitz's amended complaint. (Doc. 53-1). Luzerne County is a Pennsylvania municipality. (Doc. 53-1, ¶¶ 5-8). At all relevant times, Crocamo was a Pennsylvania resident and the Chief County Solicitor and Acting Manager for Luzerne County. (Doc. 53-1, ¶ 4). During the fall of 2014, shortly after Javitz was hired as Director of Human Resources for Luzerne County, a county employee allegedly illegally recorded Javitz while she was conducting a labor misconduct investigation. (Doc. 53-1, ¶¶ 11,

---

[1] On December 15, 2023, Plaintiff dismissed her claims against Defendant Mark Bufalino, without prejudice. (Doc. 62).

14-15). In early 2015, Javitz received detailed notes of meetings Javitz had with Luzerne County employees. (Doc. 53-1, ¶¶ 14-15). Javitz alleges that these notes "could only have been made through an illegal recording in violation of the Pennsylvania Wire Tap Act." (Doc. 53-1, ¶ 15).

Javitz reported this suspected criminal activity to her manager, David Parsnik and the Chief County Solicitor, David Pedri, who she alleges did nothing to investigate the report or the employee purportedly responsible for the report. (Doc. 53-1, ¶ 16-17). In March 2015, Javitz reported the recording to District Attorney Salavantis. (Doc. 53-1, ¶ 17-19). During Javitz's meeting with Salavantis, she identified a union member and employee of the District Attorney's office as the possible employee who made the recordings. (Doc. 53-1, ¶ 19). Salavantis allegedly said she would refer the case to the Pennsylvania Attorney General's Office, but never did. (Doc. 53-1, ¶ 21). Javitz met with Salavantis again in June of 2015 to inquire about the investigation was informed that County Manager David Lawton told Salavantis not to investigate the matter. (Doc. 53-1, ¶ 22). After her initial report to the District Attorney in March 2015, Javitz alleges that County Managers Parsnik and Lawton began retaliating against her until the time of her termination in October 2015. (Doc. 53-1, ¶¶ 24). Javitz alleges she was never given a reason for termination by Luzerne County. (Doc. 53-1, ¶ 26). Javitz reported the crime herself to the Attorney General's Office in November 2015. (Doc. 53-1, ¶ 23).

In December 2015 Javitz filed an action against Luzerne County, David Parsnik, and Robert Lawton in which she alleged Due Process, First Amendment, and state law claims. (Doc. 53-1, ¶ 27, 28, 142); *Javitz v. Luzerne County et al.*, No. 3:15-CV-2443 (*Javitz I*). At the conclusion of trial in that matter, a jury found in favor of the defendants, and the Third Circuit

affirmed the verdict. (Doc. 53-1, ¶ 28); *see Javitz v. Luzerne Cnty.*, No. 22-2519, 2023 WL 5842299 (3d Cir. Sept. 11, 2023). Javitz alleges that following that lawsuit, she applied for many positions of employment with Luzerne County for which she was not hired, despite being the most qualified applicant. (Doc. 53-1, ¶¶ 113-136).

On October 10, 2023, Javitz filed the instant amended complaint, alleging the following counts against Defendants Crocamo and Luzerne County: Count I – § 1983 Civil Rights Conspiracy; Count II – § 1983 Violation of First Amendment Right of Association; Count III – Violation of First Amendment Right to Speech and Petition; Count IV – § 1983 *Monell* Violation; Count V – § 1983 Retaliation; Count VI – Common Law Conspiracy; Count VII – Intentional Infliction of Emotional Distress; Count VIII – Declaratory Judgment; and Count IX – Breach of Legislative Enactment, Home Charter Rule, Personnel Code. (Doc. 53-1). As relief, Javitz seeks an award of actual damages, punitive damages, declaratory judgment, compensatory damages, and attorney's fees. (Doc. 53-1). On December 4, 2023, Defendants Crocamo and Luzerne County filed the instant motion to dismiss as well as a brief in support of their motion on December 18, 2023. (Doc. 56; Doc. 64). Javitz filed a brief in opposition to the motion to dismiss on January 29, 2024. (Doc. 70). Defendants filed a reply brief on February 9, 2024. (Doc. 75).

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the

complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (*quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in

the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

### III. DISCUSSION

Defendants Crocamo and Luzerne County move to dismiss Javitz's complaint in its entirety for failing to sufficiently allege claims against them; Javitz submits that she has done so. (Doc. 56; Doc. 70, at 39). Specifically, Defendants aver that (1) Javitz's § 1983 Civil Rights Conspiracy claim (Count I) and common law conspiracy claim (Count VI) should be dismissed as they are not independent causes of action; (2) Javitz's § 1983 Violation of First Amendment Right of Association claim (Count II), First Amendment Retaliation (Count V), and *Monell* claim (Count IV) should be dismissed because she fails to adequately allege such violations; (3) Javitz's claims of, Intentional Infliction of Emotional Distress (Count VII), and Federal Declaratory Judgment Act claim (Count VIII) fail as a matter of law; and (4) Javitz's claim for breach of Legislative Enactment (Count IX) fails because there is no private right afforded to her under either the Luzerne Home Rule Charter, Personnel Code, or breach of legislative enactment. Lastly, Defendants aver that punitive damages are not an available remedy against the county. (Doc. 64, at 48). For the following reasons, the Court agrees with Defendants Crocamo and Luzerne County, and will **GRANT** their motion to dismiss . (Doc. 56). Javitz's claims in Counts I, II, IV, V, VI, VII, VIII, and IX against Defendants Crocamo

and Luzerne County will be **DISMISSED**. (Doc. 53-1).

    A.    <u>Javitz's First Amendment Claims</u>

Javitz asserts First Amendment Right of Association (Count II)[2] and Retaliation (Count V) claims. Defendants Crocamo and Luzerne County submit that these claims should be dismissed for failure to state a claim and as a matter of law.

    **1.**    **First Amendment Right of Association (Count II)**

Javitz's First Amendment right of association claim is based on allegations that she was not hired to positions she alleges she was otherwise qualified for due to her non-association with Defendants. Specifically, Javitz alleges her non-hire was due to her exercise of her First Amendment free association rights, and specifically that she was not hired due to her political non-association with Crocamo, and that. (Doc. 53-1, ¶¶ 152-155). This is simply not enough to state a claim of a violation of her First Amendment Right of Association.

The First Amendment right to free association prohibits public employers from compelling an employee to relinquish or to adopt certain political associations to secure and retain employment, unless the position includes a policy-making function necessitating political fidelity to public officeholders. *Wuestling v. Lackawanna Cnty.*, 2013 WL 785260, at *3 (M.D. Pa. 2013); *citing Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Javitz's complaint must allege that (1) she was employed at a public agency in a position that does not require political affiliation; (2) she engaged in constitutionally protected conduct; and (3) such conduct was a

---

[2] Javitz also asserts a First Amendment Right to Speech and Petition claim (Count III), and though the motion to dismiss (Doc. 56) appears to seek dismissal of all claims against the Defendants, the brief in support of that motion (Doc. 64) does not address that Count and as such, will not be addressed by the Court.

substantial or motivating factor in the government's employment decision. *Id.; citing Galli v. N.J. Meadowlands Comm'n,* 490 F.3d 265, 271 (3d Cir. 2007). The third prong implicitly requires sufficient factual assertions which raise an expectation that discovery will reveal evidence of defendants' knowledge of the protected conduct as well as causation. *Galli* at 275.

Javitz's complaint fails to sufficiently allege that her conduct was a factor in the employment decision. Javitz makes no other assertion that would remotely raise an expectation that discovery might reveal evidence of knowledge of protected conduct and causation. As such, Javitz's First Amendment right to association claim (Count II) shall be dismissed.

### 2. First Amendment Retaliation (Count V)

To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that "(1) [s]he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights,' and (3) 'a causal link [existed] between the constitutionally protected conduct and the retaliatory action.'" *Baloga*, 927 F.3d at 752 (quoting *Palardy v. Twp. of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018)). Here, Defendants Crocamo and Luzerne County assert that Javitz's First Amendment retaliation claim fails as a matter of law as it is barred by collateral estoppel and failure to meet the ordinary firmness standard.

Javitz's First Amendment retaliation claim is based on allegations that she was retaliated against for bringing the first lawsuit against Defendants related to the purportedly "false and fabricated" testimony of Watchilla in *Javitz I*. The trial court in *Javitz I* determined that there was no basis to consider Watchilla's testimony manufactured, fabricated or

7

fraudulent, and the Third Circuit affirmed the same. *See Javitz I,* 2022 WL 3108031 at *6, 8; *Javitz v. Luzerne Cnty.*, 2023 WL 5842299, at *3 (3d Cir. 2023).

Collateral estoppel, or issue preclusion, prevents a party from successive litigation of a factual or legal issue that was previously litigated and resolved as an essential part of the prior court's determination, even if the issue reappears as part of a different claim. *Foster v. Township of Pennsauken*, 2017 WL 2780745, at *7–8 (D.N.J. 2017); *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). The doctrine of collateral estoppel is intended to avoid repetitive litigation, permit parties to rely on prior judgments, and allow an adversary a sense of repose following the resolution of an issue by the courts. *Id.; Hailey v. City of Camden*, 650 F. Supp. 2d 349, 354 (D.N.J. 2009) (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4416 (2d ed. 2002)). The prerequisites for the application of collateral estoppel are satisfied when: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) the issue was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment. *Id. citing Hailey*, 650 F. Supp. 2d at 354 (quoting *Peloro v. United States*, 488 F.3d 163, 174-75 (3d Cir. 2007)).

Here, Javitz's First Amendment retaliation claim is based on allegations that Defendants retaliated against her by presenting false testimony in *Javitz I.* This is precisely the issue that was litigated in *Javitz I*, and affirmed by the Third Circuit. As such, the first and second prongs of a finding of collateral estoppel are satisfied. There was also a full and final judgment here, and the finding of the trial and appellate court was essential to the prior judgment. As such, the third and fourth prongs are satisfied. Therefore, Javitz's First Amendment retaliation claim (Count V) shall be dismissed.

B. JAVITZ'S *MONELL* CLAIM

In Count IV, Javitz makes a claim pursuant to *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A *Monell* claim is a specific type of § 1983 claim where a plaintiff must demonstrate that a constitutional violation was caused by a policy, custom, or practice of a municipality. *Id.; Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996); *Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 316 (3d Cir. 2014). However, where there has been no constitutional harm, a defendant cannot be liable under § 1983 and *Monell*. *Lansberry v. Altoona Area School District*, 356 F.Supp.3d 486, 501 (W.D. Pa. 2018) (internal citations omitted). Given that this Court has found that Javitz's complaint fails to state a claim, there can be no *Monell* claim against the municipality, and the Court will dismiss Count IV.[4]

C. JAVITZ'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

In Count VII, Javitz alleges an intentional infliction of emotional distress claim against Defendant Crocamo, asserting that she and Defendant Watchilla "willfully caused the fabrication and presentation of false information in the trial" of *Javitz I*, and these acts were "outrageous" and done "intentionally and/or with extremely wanton and willful disregard for the rights of Plaintiff." While the majority of the allegations in this count are against former Defendant Bufalino, as to Defendant Crocamo, Javitz asserts only that Crocamo knew Javitz personally and allowed Bufalino to put on untrue testimony (Doc. 53-1, at ¶¶ 187-210).

The elements of a cause of action for an intentional infliction of emotional distress are "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial

---

[4] The Court notes as well that Javitz's complaint is devoid of any facts or allegations that establish any policy, practice, or custom that would give rise to a *Monell* claim.

9

probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *Fouad v. Milton Hershey School and Trust*, 2020 WL 8254470, at *24 (M.D. Pa. 2020); *Toney v. Chester County Hosp.*, 961 A.2d 192, 201 (Pa. Super. 2008) (stating that "at a minimum," a complaint must sufficiently plead facts that correspond with the Restatement [Second] of Torts). More specifically:

> [T]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society. ... [I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.

*Id.*; *Toney*, 961 A.2d at 202 (quoting *Reardon v. Allegheny College*, 926 A.2d 477, 488 (Pa. Super. 2007)).

As the court in *Fouad* outlined, Pennsylvania law sets a precise threshold for intentional infliction of emotional distress claims, and It is difficult to make out a cognizable claim for intentional infliction of emotional distress, in no small part because "the conduct must be 'so extreme in nature as to go beyond all possible bounds of decency such that it would be regarded as utterly intolerable to civilized society.'" *Fouad*, 2020 WL 8254470, at *25; quoting *Regan v. Twp. of Lower Merion*, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999). Further, "courts have been chary to allow recovery for a claim of intentional infliction of emotional distress. Only if conduct which is extreme or clearly outrageous is established will a claim be proven." Fouad, 2020 WL 8254470, at *25; quoting *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 753-54 (Pa. 1998). The Restatement (Second) of Torts instructs that "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that this conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for

another tort." *Id.;* Restatement (Second) of Torts § 46, comment d; *Hoy*, 720 A.2d at 754.

Javitz's claim for intentional infliction of emotional distress fails for two reasons. First, even taking all allegations as true for purposes of a motion to dismiss, the allegations do not create a sufficient basis for a cause of action of intentional infliction of emotional distress.[5] Second, as already determined, *supra*, the issue of the presentation of false testimony has already been litigated and determined to be without merit. For these reasons, Javitz's intentional infliction of emotional distress claim (Count VII) shall be dismissed.

D.  JAVITZ'S § 1983 CONSPIRACY AND COMMON LAW CONSPIRACY CLAIMS

In Count I (§ 1983 consipiracy) and Count VI (common law conspiracy), Javitz alleges that Defendants Crocamo and Luzerne County conspired with Defendants Bufalino and Watchilla to provide false testimony in *Javitz I*. As discussed *supra*, Javitz fails to state a claim for any underlying violations of § 1983. As such, her § 1983 conspiracy claims fail because she has not identified an underlying constitutional right that Defendants allegedly conspired to violate. *Holley v. Matos*, 2023 WL 35325, at *3 (M.D. Pa. 2023); *see Jutrowski v. Township of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018); *see also Clayworth v. Luzerne County*, 513 F. App'x 134, 138 (3d Cir. 2013) (nonprecedential) ("[B]ecause [plaintiff] failed to establish an

---

[5] Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had presented only the most egregious conduct. Fouad, 2020 WL 8254470, at *26; <u>Velardo v. Lewko</u>, No. 3:18-CV-1885, 2019 WL 5095657, at *11-12 (M.D. Pa. Aug. 22, 2019), *report and recommendation adopted*, No. 3:18-CV-1885, 2019 WL 4391444 (M.D. Pa. Sept. 13, 2019); <u>Hoy</u>, 720 A.2d at 754; s<u>ee e.g.</u>, *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); <u>Banyas v. Lower Bucks Hospital</u>, 293 Pa. Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); <u>Chuy v. Philadelphia Eagles Football Club</u>, 595 F.2d 1265 (3d. Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

underlying violation of his constitutional rights, his [civil rights] conspiracy claim also fails."). Similarly, Javitz's common law conspiracy claim is based on allegations related to her allegations of the actions of the Defendants in *Javitz I*, which this Court has determined, *supra*, do not suffice to make a claim of any underlying tort. As such, Javitz's common law claim of conspiracy fails. *See Gas Drilling Awareness Coalition v. Powers*, 2012 WL 5862471, at *5 (M.D. Pa. 2012)*; Phillips v. Selig*, 2008 PA Super 244, 959 A.2d 420, 437 (Pa.Super.Ct.2008) ("absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.") For these reasons, Javitz's § 1983 and common law conspiracy claims will be dismissed.

### E. JAVITZ'S BREACH OF LEGISLATIVE ENACTMENT CLAIM

In Count IX, Javitz asserts a claim of "breach of legislative enactment, home rule charter, personnel code" in which she alleges that Defendants breached the provision of the Luzerne County Home Rule Charter at Article I, Section 1.04 and not following its "merit hiring process." (Doc. 53-1, ¶¶ 222-225). Defendants assert that no private right of action exists under Luzerne County's Home Rule Charter. Javitz asserts that the Home Rule Charter and Personnel Code implicitly contain a private right of enforcement because it was drafter "by the citizens of the County of Luzerne" who "wanted to ensure that those hired into public service were put in those positions based on a merit hiring principle not by political patronage." (Doc. 70, at 36-37). Javitz fails to cite to any provision that would allow for a private right of action under the Home Rule Charter, arguing instead that the Court should find a private right is implied simply by existence of the law itself.

When the language of a statute does not explicitly provide for a private cause of action, Pennsylvania utilizes a three-prong analysis as a framework to determine whether a

statute implicitly creates one. *Est. of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999) (*citing Cort v. Ash*, 422 U.S. 66 (1975)). Specifically, a court should look to (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; and (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. The second factor has been recognized as the "central inquiry" of the analysis. *Id.* Like in *Witthoeft*, the Court does not find any language in the Home Rule Charter or the Personnel Code that suggests that private parties may bring an action for enforcement or damages. Javitz does not offer any legislative history or other insight that would illuminate the intent behind the Charter or Code. Further, Javitz notes in her brief in opposition to the instant motion to dismiss (Doc. 70) that the remedy that does exist is a claim under § 1983. For these reasons, the Court finds that no private right of action exists under the County's Home Rule Charter or Personnel Code, either explicitly or implied, and therefore Javitz's claim for Breach of Legislative Enactment should be dismissed.

### F.  JAVITZ'S FEDERAL DECLARATORY JUDGMENT CLAIM

In Count VIII, Javitz seeks a declaratory judgment that the Court stop the County from disparaging employees for the purpose of terminating, harming, and taking away constitutional rights, and further that the County be directed to comply with the requirements of the Home Rule Charter and Personnel Code to enforce the merit selection process and remedy past violations of the merit selection process. As the Court has determined that no private right of action exists under the Luzerne County Home Rule Charter or Personnel Code, she cannot use the Declaratory Judgment Act to seek relief. *See Levy-Tatum v. Navient Solutions, Inc.*, 183 F.Supp.3d 701, 709 (E.D. Pa. 2016) (Plaintiff cannot use the Declaratory

Judgment Act to seek relief for alleged violations of a statute that, in the first instance, does not provide her with either a private right or a private remedy.) As such, the Court will dismiss Javitz's claim for declaratory judgment.

### G. JAVITZ'S CLAIM FOR PUNITIVE DAMAGES

Finally, Javitz makes a claim for punitive damages against the Defendants. The law in this field has been settled since 1981, when the Supreme Court held that municipalities are immune from punitive damages for the bad-faith actions of their officials. *Samuels v. Pocano Mountain Regional Police Dept.*, 2014 WL 972215, at *10 (M.D. Pa. 2014); *see City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 267–68, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *see also Doe v. County of Centre,* 242 F.3d 437, 455 (3d Cir. 2001) (observing that *City of Newport* "stands for the proposition that municipalities, and more broadly, state and local governmental entities, are immune from punitive damages" under § 1983). Given this well-settled principle of civil rights litigation, Javitz's claim for punitive damages will be dismissed with respect to Defendant Luzerne County and Defendant Crocamo in her official capacity.

## IV. LEAVE TO AMEND

The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint is vulnerable to dismissal for failure to state a claim unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). However, the Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). Here, considering the deficiencies with Plaintiff's amended complaint outline supra, amendment would not futile or inequitable to Defendants. Thus, the Court will grant Plaintiff an opportunity to cure the deficiencies with her amended complaint. The

amended complaint should consider the Court's findings above and be complete in all respects.

**V.    CONCLUSION**

For the foregoing reasons, the motion to dismiss filed by Defendants Crocamo and Luzerne County is **GRANTED**. (Doc 56). Javitz is directed to file an amended complaint within 21 days**.**

An appropriate Order follows.

**BY THE COURT:**

Dated: September 16, 2024

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**